Thank you, Your Honor. May it please the Court, Henry M. Willis, for appellants in this matter. We would like to reserve four minutes for reply at the end of the argument this afternoon. So I'm assuming that's coming off your time? Off of my time. All right. I would take it off of the other side's time, but I don't think... No, but don't you have court counsel that's arguing?  Oh, okay. All right. At any rate, Your Honor, this case boils down to a single question of contract of plan interpretation. Namely, does the plan provide in clear and expressed terms for the vesting, the contractual vesting of a right to disability retirement benefits? Now, there are three things that aren't in dispute. First, disability retirement benefits never vest as a matter of law under the statute, under ERISA. Second, the Supreme Court held in M&G Polymers that contractual vesting, something that's over and above what the statute requires, is possible, but only if the plan provides for that in clear and express terms. Counsel, what case are you relying upon to support the argument that contractual benefits only vest if it's clear and explicit in the contract? In the plan, that would be M&G Polymers, Your Honor, and to the extent that it followed at CNH thereafter. But essentially, it's M&G Polymers where this was discussed at some length. Counsel, are you saying then if a provision is ambiguous, there can never be any vesting? There can never be contractual vesting. No, the statute itself provides for vesting of any number of benefits. No, but I'm saying if the contract language is ambiguous. That's right, Your Honor. It's your position that the benefits can never vest. That is, in fact, when the court in M&G referred to the rules, the traditional rules of contract interpretation, it singled out in that case the rule that in order to provide for contractual vesting, there must be clear and express language. Now, that serves as a gatekeeper, as it were. That means that if there isn't clear and express language, the other rules never come into play because the claim dies at that point. And so, Counsel, in your view, absent what you think is clear and unambiguous language that no one can even ever resort to parole evidence? It doesn't figure in this sort of case. That's right, Your Honor. So you have a provision that would suggest vesting, but is not clear and unambiguous language, and the plan sends out notice with the plan calling it a summary plan description that specifically says you are vested. If you have 10 years in, you will qualify for disability if you meet the other requirements like Social Security, and it can never, ever go away, and that's what the plan says, that in terms of the contractual analysis, that's irrelevant because it's extrinsic. There are two reasons for that, Your Honor. But first, your answer is yes. My answer is yes, and there's two reasons for that, Your Honor. First of all, that once again, what the court said in M&G was clear as day. It must be clear and express for any possibility of contractual vesting. Secondly, the example, and it's certainly that we have heard the plaintiff offer of an SPD that appeared to promise vesting of some sort. Well, the problem with that is that the Supreme Court's decision in Cigna versus Amara tells us the SPD can't amend, can't modify the plan. It's the plan document that the trustees are bound to contract law. Parole evidence is not used to amend, but to explain. But in this case, in the absence, since the case law requires that any contractual vesting can only be established by clear and express language to that effect, that relying on an SPD to provide for vesting where the plan doesn't would have the effect of amending the plan. We don't get to the ambiguity because the door is closed by the lack of clear and express language. And that's, I apologize, Your Honor, I don't want to preempt you. No, no, no, no, no. Go ahead. I mean, this is in fact, it's not just a judge-made rule. This is a fundamental principle of ERISA itself. ERISA provides that the plan must follow, and the trustees who interpret the plan must follow the governing plan documents. Why do they do that? Well, part of it is for very concrete, practical reasons. A plan needs to be able, in order to deliver the benefits promised, it needs to be protected, as it were, from the unexpected, from landmines that could be- Counsel, even if I were to agree with you about the law, I'm not saying I do, you're not suggesting that the normal rules of litigation don't apply. So, I assume, as to how we determine clear and unambiguous. And in the 30B6 deposition, there's a question, does the text under the heading, how you become vested, provide an accurate description of the pension plan's vesting provisions? And the answer was yes. And then there's another question, so the word vested is used in the SPD, has a different meaning than non-forfeitable, correct? I think that's true. Is it your position that your client's 30B6 representative's testimony is not part of the calculus either? Correct, Your Honor. The reason being, that in order to go to extrinsic evidence, there has to be an ambiguity. But if there were an ambiguity- But this isn't extrinsic evidence. Would you say that if you got a request for admission in the litigation, do you admit that the plan is clear and unambiguous and you admitted it? Yes. That nobody could rely on that either because that's extrinsic evidence as opposed to just the normal way litigation works? It's extrinsic in this respect, Your Honor, which is to say the question about what the SPD means or doesn't mean is outside the four corners of the plan document itself. But this wasn't a question about what the SPD means. The question was, do these words provide an accurate description of the plan's vesting provisions? And to that extent, we- This court now resumes this session. All right. Thank you, counsel. Mr. Willis, could you please proceed? You're muted. I can't hear you. You're muted. I know. Mr. Willis, you're- Oh, there you go. I'm back. I apologize. Sign of age, I suppose. At any rate, the question as to role of extrinsic evidence said goes directly to that point. What the court said is that in order to create factual vesting, that is, vesting of a benefit that isn't required by statute, the intent to vest must be found in the plan documents and must be stated in clear and express language. Now, we relied heavily on the clear and express language part of that sentence because, in fact, since the court below found that the language was ambiguous, that is the- Resolve this claim. But the other part- Counsel, can you give me one example with your interpretation, one example of when the grandfather clause would actually kick in to grandfather somebody? Certainly. The example that we cited is if the fund were to- Well, there are two examples. I'll first use the one that's plausible, and then there's also one that's a little less. The first one is this fund uses what's called cliff vesting, which means that for your first five years of service, you can acquire, you can accumulate five years of vesting service. But until you hit the five-year mark, you're all subject to being lost if you leave the industry, subject to break and service rules that are explained elsewhere. There's also graduated vesting that is an alternative allowed by the statute in which you can start under the statutory scheme. You can start vesting at three years, but you do it as, or it's not an all or nothing proposition. You do it on a graduated basis. If the fund were for some reason to switch from cliff vesting to graduated vesting or hypothetically if it were to do that, there would be hypothetically some people who might have more rights under as using the cliff vesting system than they would under graduated vesting. And of course, if you change the equation for a different hypothetical plan, obviously the statute, because this language all derives from ERISA, the statute would also allow those people in a case where a fund goes from graduated to cliff vesting, people that the four-year mark would have the right to say, well, I still get to hold on to that percentage. Would that be, so I understand you, would that be under ERISA, no matter what the plan said? The plan follows ERISA on this point. So on that example, the grandfather clause is irrelevant because ERISA would provide that right. The other example that I would offer is a little, as I said, a little more far-fetched. If ERISA were abolished, you'd still have a plan. I agree with the far-fetched part. And that's why it's not a here and now situation, but nonetheless, in that case, then the contractual right to hold onto what you had would apply if the plan were to change its method of measuring vesting. But in terms of normal retirement or disability retirement or early retirement, the grandfather clause provides no rights to anybody. Well, the grandfather clause doesn't apply in disability or early retirement. It does apply to normal retirement because that's a benefit that's subject to vesting. The grandfather clause is, you could say, redundant in a sense because it follows what the statute provides. But nonetheless, it's on its own terms, it does protect those folks who might be affected if there was a change in plan terms. But that doesn't include disability retirement benefit claimants because as the language on which the plaintiff relies says that when there's a change in the method of calculating vesting, if there's a change in the vesting requirements or the vesting to obtain a vested benefit. But that is where the plaintiff's argument falters because if disability retirement benefits aren't vested and the plaintiff does not claim that he's seeking a vested disability retirement benefit, if such disability retirement benefits never vest, then 1301 simply doesn't come into play. It wasn't intended for it to come into play and it doesn't come into play. Also, you're down to a minute and 40 seconds. Did you want to save any time? Oh, I did save time long ago before everything went haywire. I think that's four minutes. No, but the time on the clock was your total time. Oh no, I think it was ratcheted down to 11 when we started. No, I don't think so. I don't think so either. Well, it was 15 minutes on there when you started. Let me reserve the rest of my time because it's clear that the clock is over. In all fairness, you've had extra time in any event. I don't feel I'd like to reserve two minutes, which may be more than the clock tells me I have. Thank you. All right. Mr. Garfolo, are you going first? Yes, your honor. All right. May it please the court. Good afternoon, your honors. My name is Joseph Garfolo and I represent the appellee and cross-appellant Gary Romanchuk. My co-counsel Bradford Ginder is here for Mr. Romanchuk and he has three minutes to address any estoppel issues or questions you may have. I wanted to start with responding to the appellant's argument that a clear and express standard applies. We're not talking about contractual non-forfeitability of a benefit. Every case that we look at either involves lifetime health benefits or some argument by a plaintiff that benefits are contractually non-forfeitable. That's not what we're talking about here. We're talking about an interpretation of an election provision that even if the election provision is satisfied, the participant still isn't, most participants in fact still wouldn't be entitled to the benefit because they'd have to meet another condition for eligibility. And therefore, none of the cases that apply a clear and express standard are applicable here because we're not talking about contractual non-forfeitability of a benefit. But even if we were applying a clear and express standard, my adversary is incorrect as a matter of law that you can't look to extrinsic evidence when there's an ambiguity in the plan. And that's made clear both in the Supreme Court decision of M&G Polymers v. Tackett, where the Supreme Court arguably applies something akin to a clear and express standard, but then talks about custom and usage evidence. And then also the concurrence, the four justice concurrence in Tackett explicitly talks about a clear and express standard is the standard for a lifetime non-forfeitability of health benefits. The same is true in C&H v. Reese, another Supreme Court decision where the court there rejects an inappropriate presumption that the appellate court had made, but still makes it clear you can resort to extrinsic evidence even when a clear and express standard is applicable. So we dispute that there's a clear and express standard that is applicable to this case at all. But on top of that, even if there were a clear and express standard, we could still meet that. And Judge Bennett's point about the deposition testimony and the normal rules of litigation, I think is a very strong point through the questioning. On the excerpts of record, there is no objection during the deposition colloquy that suggests that the question was inadmissible. There's no objection at all. And I'm not going to call on SCR 49 of the excerpts of record. I don't think you need to. My recollection is the only objections you need to make during depositions into the form of the question. Right. Correct. But here we're not asking an inadmissible question either because we're asking how the trustees interpret the plan and the summary plan description. So we know that they've interpreted the plan in our favor to mean that vested does not mean non-forfeitable. But I also want to directly attack Mr. Willis's example because if you look at the plain language of the section 13.01, you can see that the last sentence is broken up into two clauses. You have the grandfather clause and then you have the clause that precedes it that in pertinent court reads no amendment may divest any accrued rights which is vested prior to the later of the date of execution of the amendment or its effective date. Mr. Willis's example, it renders that clause entirely superfluous because you don't need to protect something that under Mr. Willis's example renders that clause entirely superfluous. So then again in your view that once everybody in the plan hits 10 years, then the plan with this grandfather clause has no ability to for them increase the number of years they need to take advantage of disability if they object. It would certainly apply to those who reach 10 years but it even provides an election provision the grandfather clause at least provides an election plan for those who have three years. That's when it triggers and then they need to meet additional requirements for additional benefits for the disability. So absent the grandfather clause would you agree you lose? Yes we are not making well other than the estoppel or some other cause of action but for the benefit claim, the claim that the appellants have asserted, we would lose. We are not making an ERISA argument here. So to go to another issue, you've contended that there should be no abuse of discretion standard applied here and I'm sort of at a loss to see how that would work in a circumstance where I mean your claim is the trustees didn't apply the grandfather clause but you never raised the grandfather clause. So putting aside the issue of whose responsibility it is, I mean why shouldn't why shouldn't the trustees have a shot at the grandfather clause in the first instance when you didn't raise it in the two appeals to the trustees? Your honor because the grandfather clause was never disclosed in the primary vehicle to communicate rights and benefits. I'm sorry I don't understand that argument because you had the plan right? No not necessarily the plan was not required by law to be distributed to participants and beneficiaries. The only document that's required to be automatically distributed to participants and beneficiaries is the summary plan description. So I mean but did you ever and I just don't recall this, did you ever in the district court that neither your client nor you at the time of the appeals or prior council I don't know which council it was actually had the plan? No no we didn't well I don't I know I don't believe that we did but the the issue is that it's their burden to demonstrate an abuse of discretion standard of review rather than a de novo standard of review for the plan administrator the almanac night circuit says that there needs to be two conditions to have abuse of discretion standard applicable. First the plan needs to grant discretion which there's no dispute here but second the plan administrator or other responsible fiduciary needs to exercise that discretion so it would be their our position would be their burden to demonstrate why Mr. Romanchuk shouldn't have raised the argument about the grandfather clause and and our response to that is well we never received the summary plan description and on top of that that summary plan description does not even contain any mention of the grant. Mr Garofalo if it seems undisputed that the trustees never considered the grandfather clause um and you did not respond to um the argument uh trustees the front is argument in a footnote granted about uh this Kayano which is another ninth circuit en banc decision that says we shouldn't uh be lured into taking the place of the trustees if they haven't interpreted it we shouldn't do it in the first instance so why shouldn't this be remanded to the trustees to interpret the grandfather clause in the first instance we don't even have their interpretation to apply any sort of abusive discretion or de novo or any other kind of review judge made two points in that regard first you're referring to this guy you know v microsoft the en banc ninth circuit decision and that didn't involve the failure of the plan fiduciary to disclose the relevant provision that just involved a new issue of plan interpretation as far as i can tell from the case there was no allegation of an egregious uh erisa breach and on top of that we do have an interpretation by the 30b6 witness of the trustees that vested does not mean non-forbidable in litigation so it's not i mean that's that's a bit of a stretch isn't it i mean the trustees are an official body you don't have them making any kind of decision and this says we should not allow ourselves to be seduced into making a decision which belongs to the plan administrator in the first instance so i don't understand your distinction we don't have the plan administrator's interpretation of 1301 how do we do that in the first instance well and again i think it goes back to distinguishing this guy you know that there was no issue of a failure to disclose the relevant provision to the participant and beneficial beneficiary how does that change whether the trustees or the plan administrator has an interpretation they either they do or they don't and whether you know they they didn't disclose it to you so that's your excuse for not raising it in the two administrative appeals but they still don't we still don't have an interpretation right but they're not your honor entitled to an automatic right to interpret they need to have the discretion in the plan and on top of that they need to make an interpretation and i would go back to this case being in pencil i want to make sure i understood what you said in response to my question i think you answered it but i want to make sure i understood it you said you have not claimed in the litigation that you didn't have the plan right at the time of the appeals we it's not pleaded one way or the other whether or not we have so you nobody on your side submitted a declaration that said we had no idea uh we we didn't have the plan when we did the not to my recollection did we submit it thank you we didn't have to have the plan um judge baby i want to make sure that i have fully answered your question um we in order to have an a abuse of discretion standard of review it's not an automatic right it's actually if you look back to the supreme court's decision of firestone v brush they have to have the discretion and then exercise it and our position is that they forfeited that by not complying with a concession that the district court recognized that the trustees made during summary judgment briefing the district court indicated that the trustees had conceded that amendment number 15 increasing the vesting requirements was targeted at a change to the quote-unquote vesting requirement and the district court held that at er 21 lines 11 through 17 and the district court was correct and once you concede that there is a um that amendment number 15 is targeted as a vesting requirement that should be dispositive on top of that the district court was correct because the trustees at page 30 34 of the supplemental excerpts of record on lines 20 through 21 make that concession so the district court was correct and once you determine that it's a target to the district court it should be dispositive on top of that and that's what we're trying to do so you've exceeded your time are there any other questions no it appears not council do you have any final thoughts because opposing council did get extra time so if you have any closing thoughts you'd like to leave us with yes your honor we we are advocating for a interpretation of a clause that is uh a interpretation based on the plain language of the plan and if you find that the plan is ambiguous any extrinsic evidence should be dispositive including the summary plan description and the summary of material modifications and we don't even need to reach a de novo standard of review because the summary plan description and the summary of material modifications ought to be dispositive so for the reasons that i've argued today and for the step forth in our briefs the clause entitles mr romanchuk to elect to have his disability retirement benefit determined under the pre-amendment plan if it's all right if it's all right i apologize but i do have based on what council said one more question if that's all right so council i i'm not sure that i understand your argument about how the um the smm example helps you um so i understand your argument about how uh the summary helps you but i i'm not sure i understand how the example at uh ser 121 example one helps you so could you run through that for me absolutely your honor um we're talking about the summary of material modifications like you said at ser 121 and if you look at on ser 121 one it states explicitly that vesting requirement after december 1 2012 and if you compare that to the language of the grandfather clause which is on ser 177 it explicitly references a vesting requirement so once you although although counsel the reason that i'm not quite following you is because under this example even though uh jim in the example um had more than 10 this is on to say that with the new um the the new plan description he is not eligible for disability retirement because he didn't have 20 so isn't this exactly what happened to your say they've never considered the grandfather clause but what this shows is that the change from 10 years to 20 years of vesting credits as a condition of eligibility is a change to the vesting requirement and if you compare that to the language of the grandfather clause the grandfather clause says any amendment changing vesting requirements so therefore it establishes that when the trustees look at this objectively the change of amendment number 15 is targeted at a change to the vesting requirement and once it's a change to a vesting requirement then you would have to define vesting requirement differently than vested rights so the definition if you were to adopt mr willis's interpretation the definition of vesting would have to be different than the definition of vested as invested rights in the very same clause which is obviously unreasonable you can't have a different definition depending on the tense of the word in the same clause i i understand your argument counsel thank you your honor all right thank you counsel mr ginder you're muted thank you thank you your honors may it please the court i'm brad ginder and i will be addressing the equitable belief claim the appellants request this court to reverse the order denying their motion for summary judgment for equitable relief without citing authority to do so there there is none in their reply brief they cite two cases at page 27 that are not applicable because those usc 1292 over the order here denying the motion for summary judgment is not one of those types of orders addressed by that statute we have looked for cases and have found none that confer authority to review a motion a denial of a motion for summary judgment on estoppel under either 1291 or 1292 but if this court were to exercise jurisdiction the district court's order should be affirmed the evidence shows that with correct information mr romichuk could have and would be receiving today disability retirement benefits without changing the plan with or without the grandfather clause if the grandfather clause were not in the plan correct information by the plan representative ms bibbs would have been mr romichuk you've got to work another 150 hours next year and if you have questions you should see the union representative uh about your options and she told the appeals committee that in her opinion by knowing him he would have asked the options the the correct information the appeals committee should have provided after hearing from mr romichuk on his appeal that he would have worked another few years to attain his 20th year if he had known of the change requirement would have included application of the social security nine month trial work period to allow him to work the extra couple weeks to get the benefit however the appeals committee misinterpreted social security regulations and concluded incorrectly that they had no power to assist mr romichuk in perfecting his claim because he had relied upon ms bibbs to get a social security determination and they thought they were handcuffed that's wrong and it supports equitable estoppel as well as charges asserted in the uh our brief at page 57 if i may address the ambiguity it should be measured under the objective standard and for reasons already discussed today there is ambiguity in the plan because it contains 1301 and a reasonable person could read that and read the application or amendment and conclude that it applies indeed that's all required to refine ambiguity as the district court did ms bibbs advice to mr romichuk was consistent with such an interpretation therefore mr romichuk is entitled to go to trial if well under if at the entitled to the benefit under 1301 directly thank you all right thank you council two minutes for rebuttal thank you your honor i'll be as brief as possible um first uh as to the importance of allowing the trustees and indirectly the uh bargaining parties to set laws to deal with this issue this case is in fact an illustration of why that's required the changes that were made in disability retirement benefits in 2012 were the result of the financial meltdown of 2008 the the bargaining parties directed the trustees to take action by a certain date if they were unable to get enough relief from the irs to avoid the need to cut benefits they were unable to get the relief they uh made the the changes at the command of the bargaining parties it was and when they made those changes they did not consider the possibility of these surprise claims coming up by someone who argues that he's entitled to rights under the grandfather clause secondly going back to what supreme court said in m and g it did and there was a split between the the majority and the concurrence but the majority which had five votes held that the clear and express standard applies they also found other grounds to rely on that was necessary to get the four to concur same thing happened and with the per curiam decision in cnh they didn't revisit the 5-4 split over the clear and express standard but found but disposed of the appeal on the terms on the on the plaintiffs own terms by dealing with the defects in the plaintiffs claim that the assumptions the the the son of yard man assumptions that the plaintiffs were relying on it by no means represents any weakening much less rejection of the clear and express standard which the majority in mng applied as for the estoppel issue i'll just say that first unfortunately the evidence is such that um while mr romanchuk wanted to go back to work at gelsons gelsons rejected him um it's doubtful that uh a different interpretation of if he had been told correctly you need 20 years it's doubtful that he would have been able to make the 150 hours because gelsons wouldn't give him the accommodations he says he'd asked for he asked for them they rejected as and the more fundamental problem with the estoppel claim is of course that it seeks to he's asking for the court to give him 10 years instead of 20 that simply can't be done the ninth circuit again returns to the proposition benefit plans for good or bad pension plans and other plans must adhere to the terms of the written document the written plan documents council you've it would be prudential for us to remand this matter for the um committee to look at the grandfather clause and see if that would change the outcome in this case we think it would be appropriate to do that if uh the court were to um obviously we're arguing for um a different result on appeal but we have no objection to remand to the to the trustees for that purpose so i thought your position was the grandfather clause does doesn't even come into play it still is your honor but the um we would we can put this before the trustees all right any questions other questions from the panel so mr willis i have a question for you um would the trustees take the same position that council have taken in litigation and interpreting the grandfather clause well your honor this case um as we we've had discussions with the trustees about this case all privileged of course um i am not at i can't say how the trustees and it's a body that shifts from time to time that is to say it's not the same board that it was two or three years ago i i'm i don't have the authority to speak for them on that point let me how they would how they would decide the issue when it was put before them if if in effect reopening for a third time the appeal process council to the trustees have the authority to um award benefits based on some sort of estoppel um type of theory or do they lack that authority well on that your honor if the facts match the legal requirements yes they i know that sounds like a a hedge but as a general rule um the trustees can't willy-nilly uh i mean there are standards that so the so theoretically the trustees could say in the abstract the grandfather clause doesn't apply but given the facts as we find them to be we're still going to award disability benefits to this one individual even if that won't benefit others in the putative class that's certainly possible your honor i mean i will put it this way that um i don't want to since i since i'm not a voting member of that body um i don't want to speak for it but that is certainly possible thank you council thank you thank you thank you to all council and thank you for your forbearance as we work through our technical issues the case just argued is submitted for decision by the court and we are thank you your honor this court for the session stands adjourned
judges: Rawlinson, Bennett, Bade